OFELIA PANTOJA y OTROS, querellantes y recurridos, *v.* ESCO CORPORATION y BARONET OF PUERTO RICO, querellados y recurrentes.

*Número:* R-67-201        *Resuelto:* 14 de junio de 1971

*Hartzell, Fernández & Novas* y *José Luis Novas Dueño,* abogados de los recurrentes; *Jesús Hernández Sánchez,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Los querellantes reclamaron de las querelladas el pago de la mesada ascendente a $3,124 por despido injustificado según se desglosa en un exhibit de la querella que relaciona

los nombres de los querellantes y la cuantía de la mesada de cada uno.

Se impugna la sentencia dictada en este caso que condenó a las querelladas a pagar a cada uno de los querellantes el importe de su sueldo correspondiente a un mes y que dictaminó que "Dicho pago debe hacerse a base del cómputo que resulte del salario semanal que devengaba cada querellante al momento del despido" porque (1) el tribunal de instancia carecía de jurisdicción sobre la materia; (2) no se presentó prueba de que los querellantes, con excepción de Ofelia Pantoja, fueran despedidos y del salario mensual que recibían de las querelladas en el momento del despido.

En su contestación, las querelladas negaron todas las alegaciones de la querella y como defensas alegaron que (1) el tribunal carecía de jurisdicción pues los hechos que se alegan son de la exclusiva jurisdicción de la Junta Nacional de Relaciones del Trabajo; (2) que los querellantes alegaron los mismos hechos ante la referida Junta y ésta desestimó los cargos basados en dichos hechos; (3) la causa de acción está prescrita; (4) la querella no aduce hechos constitutivos de una causa de acción; (5) la cesantía de los querellantes ocurrida el 22 de abril de 1960 se debió a falta de trabajo.

La única testigo de los querellantes, Ofelia Pantoja, testificó que ella y los demás querellantes (cuyos nombres recordó de una lista que ella preparó) asistieron a una reunión de orientación y organización de la unión celebrada en un salón de un caserío público anexo a la fábrica, en 21 de abril de 1965; que al día siguiente el gerente de ambas querelladas reunió a los obreros y les informó que las personas que habían asistido a la reunión de la unión y habían firmado, iban a ser despedidas "por asuntos de la unión"; que con posterioridad (el 22 de abril de 1960 según la contestación) los querellantes fueron dejados cesantes y se colocaron otras personas en sus puestos; que dejaron cesantes tanto a los que

firmaron como a los que no firmaron; que después del despido hubo piquetes frente a la fábrica.

Las partes estipularon que estos obreros fueron sustituidos después de su despido y durante el subsiguiente estado de huelga en las fábricas de las querelladas.

En cuanto al salario o jornal que ganaban los querellantes al ser despedidos, la única prueba que aparece del récord es el testimonio de Ofelia Pantoja quien, al contestar una pregunta del juez de instancia, dijo que ganaba de $24 a $25, a lo que su representante legal añadió "semanales".

Las partes también estipularon que las querelladas se dedicaban al comercio interestatal y que en relación con algunos de los hechos en este caso, Ofelia Pantoja intervino en el caso Núm. 24 CA Núm. 1306 ante la Junta Nacional de Relaciones del Trabajo; que dicha Junta ejerció su jurisdicción en relación con hechos de este caso según los casos Núms. 24 CA 1338 y 1306.

■ 1.—El despido de un obrero debido a su actividad unional es una práctica ilícita que, cuando ocurre en las operaciones dedicadas al comercio interestatal, la jurisdicción es exclusiva de la Junta Nacional de Relaciones del Trabajo excepto en aquellos casos en que dicha Junta haya declinado su jurisdicción. *J.R.T.* v. *Milares Realty, Inc.*, 90 D.P.R. 844, 849–851 (1964).

En relación con un cargo por actos y conducta de la unión en violación de la Sec. 8(b)(7)(C) de la Ley de Relaciones Obrero-Patronales (29 U.S.C.A. 158(b)(7)(C), luego del despido de los querellantes, radicada por las querelladas ante la Junta Nacional, se sostuvo una orden de entredicho dictada por el Tribunal de Distrito Federal para Puerto Rico que ordenó a la unión a desistir de mantener piquetes frente a las fábricas de las querelladas no obstante la alegación de la unión de que los piquetes se establecieron con el único propósito de protestar del despido de 39 obreras el viernes anterior al martes cuando se dio comienzo al piquete

y que dicho piquete no se estableció con el propósito de forzar o requerir al patrono que reconociese, o a los empleados que aceptasen, a la unión como el agente de negociación colectiva de los obreros. En opinión dictada por el Tribunal de Apelaciones del Primer Circuito Federal se hizo referencia a que el patrono en este caso "había dejado cesante a 33 obreras en Vega Baja, ostensiblemente por falta de trabajo *pero, de acuerdo con un cargo subsiguientemente radicado por las Uniones, en represalia por asistir a una reunión unional la noche anterior." Local 346 International Leather Goods Union* v. *Compton,* 292 F.2d 313 (1st Cir. 1961). (Énfasis nuestro.)

No se adujo prueba alguna de la acción que tomó, si es que tomó alguna, la Junta Nacional, en relación con el referido cargo radicado por las uniones por la alegada práctica ilegal de las querelladas de despedir de su empleo a dichas obreras.

■ Correspondía a la Junta Nacional, en virtud del referido cargo radicado por las uniones, determinar si los querellantes fueron despedidos por falta de trabajo como alegaron las querelladas, en cuyo caso hubo causa justificada para su cesantía y, por consiguiente, no procedía el pago de la mesada, o si el despido constituyó una práctica ilícita del trabajo, en cuyo caso hubiera ordenado el reempleo de los querellantes y que se les pagase su salario desde la fecha de su cesantía. En este último caso tampoco procedía el pago de mesada alguna. *Time-O-Matic Inc.,* v. *N.L.R.B.,* 264 F.2d 96 (7th Cir. 1959) ; *National Labor Relation Board* v. *Polson Logging Co.,* 136 F.2d 314 (9th Cir. 1943).

■ 2.—No aparece del récord prueba alguna de la cuantía de la mesada reclamada. Como la cuantía de la mesada alegada en la querella fue negada categóricamente por las querelladas era obligación de los querellantes aducir prueba específica del salario que cada uno ganaba en el momento

de ser despedido de su trabajo de manera que sirviera de base para determinar la mesada reclamada.

En vista de lo expuesto, *debe revocarse la sentencia dictada en este caso y desestimar la querella.*

El Juez Presidente Señor Negrón Fernández no intervino.